IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


**ABIGAIL FARELLA and LOGAN W. MURPHY,**
**on behalf of themselves and all others**
**similarly situated**                                                          **PLAINTIFFS**


**V.**                                    **CASE NO. 5:22-CV-5121**

**DISTRICT JUDGE A.J. ANGLIN,**
**GREGG PARISH, and JAY SAXTON**                          **DEFENDANTS**


<u>**MEMORANDUM OPINION AND ORDER**</u>

Contents

I.     **BACKGROUND** ................................................................................................. 3

    A.  Plaintiffs' Arrest & Pretrial Incarceration ............................................... 3

    B.  Arkansas Criminal Procedure.................................................................... 5

II.    **MOOTNESS** ................................................................................................... 7

III.   **SOVEREIGN IMMUNITY** ............................................................................ 10

    A.  Defendant Saxton ................................................................................... 11

    B.  Defendant Anglin.................................................................................... 13

IV.    **Abstention** .................................................................................................. 19

    A.  *Colorado River* Abstention ................................................................... 21

    B.  *Younger* Abstention.............................................................................. 26

    C.  *Brillhart* Abstention ............................................................................. 24

V.     **FAILURE TO STATE A CLAIM** ................................................................. 28

    A.  Legal Standard........................................................................................ 28

    B.  Analysis .................................................................................................. 29

VI.    **JOINDER** ..................................................................................................... 36

VII.   **CONCLUSION** ............................................................................................ 39

Plaintiffs Abigail Farella and Logan W. Murphy, on behalf of themselves and others similarly situated, sue Defendants District Judge A.J. Anglin, Executive Director of Arkansas Public Defender Commission Greg Parrish, and Chief Benton County Public Defender Jay Saxton. Ms. Farella and Mr. Murphy allege that indigent criminal defendants possess a constitutional right to legal representation during the judicial officer's determination of bail and Defendants' failure to timely appoint counsel violates the Sixth and Fourteenth Amendment. *See* Doc. 34. Plaintiffs seek injunctive and declaratory relief that would, in effect, require defense counsel's presence and participation in the bail determination for indigent defendants.

Now before the Court are Separate Defendants Parrish and Saxton's ("Public Defender Defendants") Motion to Dismiss (Doc. 61) and Separate Defendant Anglin's Motion to Dismiss (Doc. 47).[1] In support of dismissal, Defendants invoke sovereign immunity and abstention, as well as allege that the Amended Complaint fails to state a claim and omits indispensable parties.

For the below reasons, the Court **DENIES** Public Defender Defendants' Motion to Dismiss and **DENIES** Defendant Anglin's Motion to Dismiss.

## I.    BACKGROUND

### A.    Plaintiffs' Arrest & Pretrial Incarceration

On May 20, 2022, Bentonville Police Department officers arrested Plaintiff Abigail Farella for felony possession of a controlled substance, misdemeanor possession of drug

---

[1] The Court considered Public Defender Defendants' Motion to Dismiss (Doc. 61), Plaintiffs' Response in Opposition (Doc. 70), and Public Defender Defendants' Reply (Doc. 73); and Separate Defendant Anglin's Motion to Dismiss (Doc. 47) Plaintiffs' Response in Opposition (Doc. 50), and Separate Defendant Anglin's Reply (Doc. 54).

paraphernalia, and misdemeanor shoplifting. She was transported to the Benton County Jail and placed in a cell. That same day, Bentonville officer Corporal Kevin Albert filed a sworn probable cause affidavit and reported that the State joined him in requesting bail be set at $2,500. Two days later, on May 22, Benton County District Court Judge Anglin conducted an initial hearing pursuant to Arkansas Rule of Criminal Procedure 8.1. Judge Anglin set Ms. Farella's bail at *$10,000* cash or corporate surety; scheduled arraignment—Ms. Farella's next court date—for June 27, 2022; and found Ms. Farella indigent and appointed the public defender to represent her in subsequent proceedings.

Ms. Farella remained in jail until June 27, 2022, when Arkansas Circuit Court Judge Brad Karren entered a diversion order. The State agreed to drop the charges against Ms. Farella if she stayed out of trouble for the next 12 months. Judge Karren also entered an order vacating Ms. Farella's $10,000 bond and stating that "counsel for Defendant and Deputy Prosecutor Sharon Nowlin have agreed that a written promise to appear for future court dates is sufficient to assure Defendant's appearance at future court dates."[2]

Bentonville Police arrested Plaintiff Logan W. Murphy on June 20, 2022, for felony fleeing and misdemeanor reckless driving. Bentonville Police submitted a sworn probable cause affidavit and reported that the State joined in requesting bail be set at $25,000. The next day, Judge Anglin conducted a bail hearing with Mr. Murphy. He set bail at *$40,000* cash or corporate surety; set arraignment—Mr. Murphy's next court date—for July 25,

---

[2] The Arkansas Judiciary makes court records publicly available through https://caseinfo.arcourts.gov. The Court takes judicial notice of the state court docket associated with Ms. Farella's underlying criminal case, 04CR-22-1028, *State v. Farella*, as well as the "Agreed Order" and the "Diversion Order-27-22; 6 MO REV HRG 12-13-22 @ 8:30AM" dated June 27, 2022, and filed to the docket the same day at 2:43 p.m.

2022; and found Mr. Murphy indigent and appointed the public defender to represent him at future proceedings. It appears Mr. Murphy remained in jail through July 22, 2022, when he posted bail.[3]

Although counsel was appointed during the initial appearance, the Amended Complaint alleges that no attorney—prosecutor or defense counsel—was present during either Ms. Farella's or Mr. Murphy's bail hearing.

## B.    Arkansas Criminal Procedure

Under Arkansas law, "[a]n arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay." Ark. R. Crim. P. 8.1. This is the "first appearance," sometimes referred to as an "8.1 hearing" or "Rule 8.1 hearing."

Arkansas Rule of Criminal Procedure 8.3 governs what must occur during the proceeding:

(a) Upon the first appearance of the defendant the judicial officer shall inform him of the charge. The judicial officer shall also inform the defendant that:

(i) he is not required to say anything, and that anything he says can be used against him;

(ii) he has a right to counsel; and

(iii) he has a right to communicate with his counsel, his family, or his friends, and that reasonable means will be provided for him to do so.

---

[3] Likewise, the Court takes judicial notice of the state court docket associated with Mr. Murphy's underlying criminal case, 04CR-22-1247, *State v. Murphy*, as well as the "Court Info Sheet, Order of Indigency, Spencer Bail Bond $40,000," filed on September 6, 2022, and the "Court Info Sheet, Order of Indigency, Spencer Bonding Services, Bail Bond $40,000," filed on September 16, 2022. Both documents contain the same bail bond form for $40,000, dated July 22, 2022.

(b) No further steps in the proceedings other than pretrial release inquiry may be taken until the defendant and his counsel have had an adequate opportunity to confer, unless the defendant has intelligently waived his right to counsel or has refused the assistance of counsel.

(c) The judicial officer, if unable to dispose of the case at the first appearance, shall proceed to decide the question of the pretrial release of the defendant. In so doing, the judicial officer shall first determine by an informal, non-adversary hearing whether there is probable cause for detaining the arrested person pending further proceedings. The standard for determining probable cause at such hearing shall be the same as that which governs arrests with or without a warrant.

Ark. R. Crim. P. 8.3.

The primary purpose of the Rule 8.1 hearing is to "ensure that an arrested person hears directly from the judicial officer an explanation of the charges and his constitutional rights, particularly his right to counsel and his right to remain silent." *Landrum v. State*, 328 Ark. 361, 372 (1997) (Newbern, J., dissenting). However, the judicial officer often incorporates several additional pretrial tasks into the hearing. First, the judicial officer often assesses indigency and, if appropriate, appoints counsel.[4] Second, in some circumstances, the judicial official conducts a pretrial release inquiry and sets bail if warranted.[5] Ark. R. Crim. P. 8.4, 8.5.

---

[4] "The court need not appoint counsel if the indigent defendant is charged with a misdemeanor and the court has determined that under no circumstances will incarceration be imposed as a part of any punishment." Ark. R. Crim. P. 8.2.

[5] The pretrial release inquiry is required "in all cases where the maximum penalty for the offense charged exceeds one (1) year and the prosecuting attorney does not stipulate that the defendant may be released on his own recognizance," as well as "in those cases where the maximum penalty for the offense charged is less than one (1) year and in which a law enforcement officer gives notice to the judicial officer that he intends to oppose release of the defendant on his own recognizance." *Id.* 8.4.

Pursuant to Rule 8.5, the judicial officer may conduct the pretrial release inquiry either during or prior to the Rule 8.1 hearing.

In Benton County, it appears that attorneys rarely (if ever) attend the Rule 8.1 hearing. Regardless, the prosecuting attorney may weigh in on the pretrial release inquiry. Rule 8.5 instructs the prosecuting attorney to make recommendations concerning "the advisability and appropriateness of pretrial release," "the amount and type of bail bond," and "the conditions, if any, which should be imposed on the defendant's release." *Id.* 8.5(c). In practice, law enforcement and the State often join in requesting bail be set at a particular amount, according to the Amended Complaint.

Public defenders though, appointed during the Rule 8.1 hearing itself, never attend these proceedings in Benton County.

## II.   MOOTNESS

The Court's "'continuing obligation' to assure that [it has] jurisdiction requires that [it] raise issues of standing and mootness sua sponte." *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 252 (3d Cir. 2017).[6] It does so here to address mootness in the context of a putative class action. The Court concludes that Plaintiffs' claims fall within the inherently transitory exception to mootness and remain live.

"Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (en banc) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000)). Generally, "[w]hen, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances and a federal court

---

[6] The Court's determination on mootness is necessarily without prejudice. Any party may raise the issue again, whether in disagreement with this Court's analysis or based on new factual developments.

can no longer grant effective relief, the case is considered moot." *Id.* (cleaned up). However, special rules apply to the "inherently transitory" class-action claim.

In *Sosna v. Iowa,* 419 U.S. 393, the Supreme Court held that "a named plaintiff who had standing when the court certified a class may continue to seek relief for class members even if later events moot the plaintiff's individual claim." *Fox v. Saginaw Cnty.*, 67 F.4th 284, 297 (6th Cir. 2023) (describing *Sosna*'s holding). In these circumstances, the necessary case or controversy exists "between a named defendant and a member of the class represented by the named plaintiff" for the purposes of standing. *Belgau v. Inslee*, 975 F.3d 940, 949 (9th Cir. 2020) (quoting *Sosna*, 419 U.S. at 402).

The Court has "extended this principle to situations where, as here, the district court has not ruled on class certification." *Belgau*, 975 F.3d at 949 (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)). In *Gerstein*, the Court recognized that "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 399 (1980). *Gerstein* involved a class action challenging the state's failure to provide pretrial detainees with prompt judicial determination of probable cause. By the time it reached the Supreme Court, the named plaintiffs' claims were moot, and "the record suggested that their interest might have lapsed even before the District Court certified the class." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537–38 (2018) (describing procedural posture in *Gerstein*). The Court held that the case remained live, explaining:

> Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly

situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly "capable of repetition, yet evading review."

*Gerstein*, 420 U.S. at 110 n.11.

The Court held that such circumstances warranted a "limited exception to *Sosna*'s requirement that a named plaintiff with a live claim exist at the time of class certification." *Sanchez-Gomez*, 138 S. Ct. at 1539. This exception applies when (1) "it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class," *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotations omitted), or "the duration of the challenged action is 'too short' to allow full litigation before it ceases," *Belgau*, 975 F.3d at 949; and (2) "there will be a constant class of persons suffering the deprivation complained of in the complaint." In these circumstances, the "case will not be moot, even if the controversy as to the named plaintiffs has been resolved," *Bellin*, 6 F.4th at 473, because "the decision on certification may be deemed to 'relate back' to the filing of the complaint," *Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823, 826 (8th Cir. 2008) (citing *Gerstein*, 420 U.S. at 110 n.11).

Here, Plaintiffs challenge the constitutionality of pretrial detention absent assistance of counsel to contest the bail determination. The Court concludes Plaintiffs' claims are inherently transitory, and the exception applies.

Since *Gerstein*, "the Supreme Court has expressly held on several occasions that, in a class action challenging procedures for pretrial detention, the release of the named plaintiff from jail does not moot the action." *Booth v. Galveston Cnty.*, 352 F. Supp. 3d 718, 728 (S.D. Tex. 2019) (citing *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991); *Gerstein*, 420 U.S. at 110 n.11). As noted by the Seventh Circuit, "the length of

incarceration in a county jail generally cannot be determined at the outset and is subject to a number of unpredictable factors, thereby making it inherently transitory." *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010). Even to the extent Plaintiffs' pretrial detention followed something of a more predictable pattern—Plaintiffs allege that Benton County pretrial detainees often receive a second bond hearing within about four to five weeks—the duration of the challenged action is too short to allow for the full litigation of Plaintiffs' claims. Finally, given the nature of pretrial detention, there is a "constantly changing putative class that will become subject to the allegedly unconstitutional conditions." *Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997).

Plaintiffs' claims remain live.

## III.   SOVEREIGN IMMUNITY

Defendants Saxton and Anglin each seek dismissal on the ground of sovereign immunity.

Generally, state sovereign immunity, as enshrined in the Eleventh Amendment and interpreted by the Supreme Court in *Hans v. Louisiana*, 134 U.S. 1 (1890), bars a federal court from hearing a private plaintiff's claim against a state. *See Pharm. Rsch. & Mfrs. of Am. v. Williams*, 64 F.4th 932, 948 (8th Cir. 2023). But, in *Ex parte Young*, the Supreme Court recognized two critical nuances to sovereign immunity doctrine. 209 U.S. 123 (1908). First, "a state officer who violates the United States Constitution acts without state authority and is thus subject to suit." *Nix v. Norman*, 879 F.2d 429, 432 (8th Cir. 1989). Second, the Eleventh Amendment does not bar suits for *prospective injunctive relief* against state officials to prevent violations of federal law so long as the official has "some connection with the enforcement of that act." *Ex parte Young*, 209 U.S. at 157. Under this

principle, while "a liability which must be paid from public funds in the state treasury" remains unavailable, *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), a private party may seek an "injunction[] to prevent or to remedy a state officer's conduct," *Nix*, 879 F.2d at 432.

In sum, under *Ex parte Young*, a state official may be sued in his or her official capacity so long as (1) the suit seeks prospective injunctive relief, (2) to prevent violations of federal law, and (3) the official has some connection with enforcement of that act. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *McDaniel v. Precythe*, 897 F.3d 946, 951–52 (8th Cir. 2018) (cleaned up) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

As explained below, the Court finds that the claims against Defendants Saxton and Anglin both fall within the *Ex parte Young* exception to sovereign immunity.

## A.    Defendant Saxton

Defendant Saxton is the Chief Public Defender of Benton County. He challenges the third prong under *Ex parte Young* analysis, arguing that he lacks a sufficient connection with enforcement of the challenged conduct to fall within the exception to sovereign immunity.

Mr. Saxton claims he has no authority to "set or enforce" state policy. (Doc. 62, p. 10). Nor, he contends, does he "have responsibility for, or control over, the number of public defenders that the State funds, the number of public defenders assigned to Benton County, or whether to staff public defenders on bail hearings." *Id.* The Arkansas Public

Defender Commission, in conjunction with the Arkansas legislature, possess the exclusive right to make such changes, according to Mr. Saxton. Arkansas Code § 16-87-203 empowers the Commission to "establish policies and standards for the organization and operation of public defenders' offices throughout the state, including funding, compensation, staffing, and standards of experience for attorneys assigned to particular cases" and to "allocate personnel for each public defender's office throughout the state." *Id.* § 16-87-203(a). The Arkansas legislature handles appropriations, setting forth in law both public defender salaries and the number of positions. *See* Doc. 61-1, p. 19.

Mr. Saxton lacks authority to independently increase the number of public defenders in his office. That is clear. But the connection required under *Ex Parte Young* "does not need to be primary authority to enforce the challenged law." *Church v. Missouri*, 913 F.3d 736, 748 (8th Cir. 2019) (quoting *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) ("*281 Care Comm. I*")). "Nor does the state officer need to have the full power to redress a plaintiff's injury in order to have 'some connection' with the challenged law." *Id.* (brackets omitted) (quoting *281 Care*, 638 F.3d at 633). Plaintiffs allege that Mr. Saxton "has the authority to order the deputy public defenders to certain courts at certain times." (Doc. 70, p. 15). Such authority suffices to establish "some connection" to the challenged conduct, and the statutory provision Mr. Saxton cites does not undermine that claim.

At the motion-to-dismiss stage, the Court need only determine whether a defendant is a "*potentially* proper party for injunctive relief." *Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005) (emphasis in original). *Compare 281 Care Comm. I*, 638 F.3d at 626 (addressing

*Ex parte Young* doctrine at motion-to-dismiss stage), *with 281 Care Comm. v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014) ("*281 Care Comm. II*") (addressing *Ex parte Young* doctrine at summary-judgment stage). Should Mr. Saxton later establish, for example, the complete absence of authority to direct an attorney to attend an initial hearing, that fact may change the analysis and he may raise the issue then.

### B.    Defendant Anglin

Defendant District Judge Anglin is the elected district judge in Division 3 of Benton County, Arkansas. He argues, first, that the Supreme Court's recent decision in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021), renders state court officials categorically exempt from suit, even under *Ex parte Young*. Second, he maintains that even if suits against some state court officials may proceed, the *Ex parte Young* exception to state sovereign immunity does not apply here.

### 1.    State Court Officials: Categorical Exemption?

Courts have long understood claims against state court officials to warrant special solicitude in the *Ex parte Young* analysis. But while the doctrine does not bless prospective relief that would "restrain a state court from acting" or from "exercising jurisdiction in a case," nor does it categorically prohibit prospective relief against state court officials.[7] Nevertheless, according to Judge Anglin, *Jackson* signifies a sea change.

---

[7] *See, e.g., Anderson v. Valdez*, 913 F.3d 472 (5th Cir. 2019) (holding that the *Ex parte Young* exception to Eleventh Amendment immunity applied to claim against state court justice brought by former state court employee alleging First Amendment retaliation); *Ward v. City of Norwalk*, 640 F. App'x 462 (6th Cir. 2016) (holding that the *Ex parte Young* exception applied to offenders' suit alleging that their jail time for low-level misdemeanors and traffic violations was unconstitutionally lengthened and seeking prospective declaratory judgment against municipal court judge and court clerk); *Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) (finding civil rights claims against state court judges and

He contends that a state court official may not face liability in his or her official capacity, even where such an individual would otherwise be subject to suit under *Ex parte Young*. Neither this Court nor the Eighth Circuit agree.

In *Jackson*, the Supreme Court examined the Texas Heartbeat Act, 87th Leg., Reg. Sess., known as "S.B. 8," which effectively bars an abortion after six weeks and empowers private citizens to sue any person who performs or "aids and abets" an abortion after the six-week mark. Tex. Health & Safety Code Ann. §§ 171.204(a), 171.207(a), 171.208(a). The plaintiffs argued the law was unconstitutional and sought an injunction barring state court judges from presiding over, and state court clerks from docketing, any such action. *Jackson*, 142 S. Ct. at 532. The Supreme Court denied that request. *Id.* It explained that *Ex parte Young* does not "normally permit federal courts to issue injunctions against state-court judges or clerks" because these officials "[u]sually[] do not enforce state laws as executive officials might." Additionally, the Court continued, "[i]f a state court errs in its rulings . . . the traditional remedy has been some form of appeal, . . . not the entry of an *ex ante* injunction preventing the state court from hearing cases." *Id.*

The Court further implied that the sovereign immunity analysis may implicate standing, specifically Article III's case-or-controversy requirement. It explained that "[j]udges exist to resolve controversies about a law's meaning or its conformance to the

---

employees fell within the *Ex parte Young* exception to sovereign immunity); *Condon v. Haley*, 21 F. Supp. 3d 572 (D.S.C. 2014) (holding Eleventh Amendment immunity did not bar same-sex couple's action against South Carolina county probate judge challenging the constitutionality of South Carolina's refusal to recognize same-sex marriages); *Zeigler v. New York*, 948 F. Supp. 2d 271 (N.D.N.Y. 2013) (holding that *Ex parte Young* exception to sovereign immunity may apply to New York district administrative judge in § 1983 suit challenging county's plan for providing counsel to indigent criminal defendants).

Federal and State Constitutions, not to wage battle as contestants in the parties' litigation." *Id.* "'[N]o case or controversy' exists 'between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute,'" *Id.* (quoting *Pulliam v. Allen*, 466 U.S. 522, 538, n. 18 (1984)). As a result, the Court held, the relief sought by the plaintiffs was unavailable.

The Eighth Circuit construes the *Jackson* decision to simply reiterate existing doctrine. In *Courthouse News Service v. Gilmer*, 48 F.4th 908 (8th Cir. 2022), the plaintiff, Courthouse News, alleged that Missouri's e-filing system unconstitutionally delayed reporters' access to newly filed complaints. It sued the Circuit Clerk for St. Louis County and the Missouri State Courts Administrator seeking an injunction that would require more timely access. The defendants moved for dismissal, arguing *Jackson* prohibited such relief. The Eighth Circuit disagreed. It explained that the "rule . . . has not changed over the last century[.] [S]tate sovereign immunity shields state-court judges and clerks from prospective relief that will interfere with their ability to 'act in any case[,]' . . . [a]nd a lawsuit aimed at preventing state-court clerks from docketing abortion cases" does just that. *Id.* at 912. But, the court continued, the injunction sought by Courthouse News would have no such effect. It would "not prevent any Missouri court from 'acting' or 'exercising jurisdiction' in any case." *Id.* (brackets omitted). Instead, it would simply require the defendants "to release newly filed petitions earlier than she might otherwise have." *Id.* (brackets omitted). It concluded, "That is not the type of relief that will upset the whole scheme of government." *Id.* (cleaned up).

Other circuits have reached similar conclusions post-*Jackson*. *See Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325, 334 (6th Cir. 2022) (noting that "[t]he

Juvenile Court's status as an arm of the State would not prevent [the court] from enjoining the administrators from future violations of the Takings Clause"); *Argen v. Att'y Gen. New Jersey*, No. 21-2571, 2022 WL 3369109, at *3 (3d Cir. Aug. 16, 2022) (concluding a judge who makes and enforces a rule of an administrative character can be sued under Section 1983 for declaratory relief (cleaned up)).

This Court finds the Eighth Circuit's *Gilmer* analysis applicable here. The present circumstances meaningfully differ from those in *Jackson*. First, Plaintiffs seek relief entirely unrelated to the district court's jurisdiction. Plaintiffs simply request that an existing administrative obligation—appointment of counsel to indigent arrestees—occur in time for counsel to participate in the pretrial release inquiry. Such relief would have no impact on the authority or discretion to appoint counsel—or, for that matter, to rule on pretrial release. Like Courthouse News Service in *Gilmer*, Ms. Farella and Mr. Murphy ask only that state court officials perform their administrative function prior to conducting the pretrial release inquiry.

Second, as in *Gilmer*, the traditional appeal is unavailable. The alleged defect— failure to appoint counsel in time to participate in the pretrial release inquiry—cannot be raised in defense of criminal prosecution. Even a favorable collateral ruling would have little effect for class members. Indigent arrestees would continue to face the same delay in access to counsel. Moreover, according to the Amended Complaint, while an indigent criminal defendant may request reconsideration of bail, Judge Anglin and other Benton County courts typically take any such request up at arraignment—which is consistently set for at least a month following the Rule 8.1 hearing. *See* Doc. 34, p. 9. In effect, Benton

County's procedures deprive indigent individuals of any opportunity to timely challenge the bail determination.

Finally, Plaintiffs do not seek to litigate the "merits of any underlying lawsuit" by suing Judge Anglin. Plaintiffs want legal representation made available to indigent defendants during bail hearings; Judge Anglin contends defendants are just fine without counsel. On this very narrow issue—the timing associated with appointment of counsel—Plaintiffs and Defendant Anglin are adverse.

Accordingly, the Court rejects Judge Anglin's position. *Jackson* does not render state court officials categorically exempt from suit. It remains true that, in some circumstances, state court officials may fall within the ambit of the *Ex parte Young* exception to sovereign immunity.

### 2.   *Ex parte Young* Analysis

Judge Anglin contends that even if the Court finds no categorical exemption to exist, Plaintiffs fail to establish the *Ex parte Young* exception applies here. He argues that Plaintiffs seek monetary damages, rather than prospective relief; no ongoing violation exists; and he lacks the requisite connection with the challenged conduct. The Court disagrees.

First, Judge Anglin argues Plaintiffs seek retrospective, not prospective relief. He contends that a ruling in favor of Plaintiffs would require "the State . . . to pay for attorneys to be present at these hearings," thereby imposing additional expense on the state. (Doc. 48, p. 8). So, he reasons, "even though Plaintiffs have attempted to couch their claims as only seeking declaratory relief [against Judge Anglin,] [i]n actuality, Plaintiffs

seek to have this Court control the actions and treasury funds of the State," *id.*, and, as a result, that relief is properly characterized as retrospective.

The Supreme Court settled this issue almost 50 years ago in *Edelman v. Jordan*, 415 U.S. 651, 668 (1974), when it explained that "under *Ex parte Young*, a federal court may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury." *Quern v. Jordan*, 440 U.S. 332, 337 (1979). *See also Nix*, 879 F.2d at 432 (same). "What the [Eleventh] Amendment forecloses is an award of money required to be paid from state funds that compensates a claimant for the state's past violations of federal law." *New York City Health & Hosps. Corp. v. Perales*, 50 F.3d 129, 135 (2d Cir. 1995). But "where an adverse effect on the state treasury is 'the necessary result of compliance with decrees which by their terms were prospective in nature,' the Eleventh Amendment poses no obstacle." *Morenz v. Wilson-Coker*, 415 F.3d 230, 237 (2d Cir. 2005) (quoting *Edelman*, 415 U.S. at 668). Judge Anglin makes no mention of the long line of cases, nor does he explain why this case is distinguishable. His objection is wholly unavailing, and the Court concludes that Plaintiffs properly state a claim for prospective relief.

Judge Anglin next argues that *Ex parte Young* does not apply because "there is not an ongoing violation given that the actions in question was [sic] a onetime event that happened in the past." (Doc. 48, p. 10). Judge Anglin, however, does not deny that he continues to engage in the same pattern of allegedly unconstitutional conduct. The existing policy will subject putative class members to the same injury on an ongoing basis.

Finally, Judge Anglin contends that *Ex parte Young* does not apply because he "does not have the ability to ensure that sufficient public defenders are hired to cover the

hearings in question," and as a result, lacks the requisite connection to the allegedly unconstitutional conduct. *Id.*

Arkansas law empowers state district court judges like Judge Anglin to preside over criminal misdemeanor and felony pretrial proceedings, including the bail hearings at issue here. *See* Ark. Code Ann. § 16-88-101(c). Arkansas Rule of Criminal Procedure 8.2 requires that a judicial officer determine whether a defendant is indigent and, if so, appoint counsel. Rule 8.3 requires the judicial officer to decide the question of pretrial release. District court judges regularly execute these functions—and, according to the Amended Complaint, conduct the pretrial release inquiry without the presence of counsel for indigent individuals. As a result, the statutory and regulatory schemes provide the district court judge with "some connection" to the allegedly unconstitutional policy and practice.

The connection required under *Ex Parte Young* "does not need to be primary authority to enforce the challenged law." *Church*, 913 F.3d at 748 (quoting *281 Care Comm. I*, 638 F.3d 621 at 632). That Judge Anglin lacks the authority to hire additional public defenders has no impact on the analysis.

## IV.   Abstention

Defendants argue this Court should abstain from exercising its jurisdiction given the pendency of a state case, *Ricky Lee Burnett v. State of Arkansas*, CR-22-253.[8]

---

[8] Defendants cited the pendency of a second state case, *Cory Thompson v. State of Arkansas*, CR-23-93, as a basis for abstention. In his petition for writ of certiorari and habeas corpus, Mr. Thompson alleged improper pretrial detention and failure to provide indigent defendants with counsel during the bail hearing. However, on April 10, 2023, the Arkansas Supreme Court denied Mr. Thompson's petitions. While his criminal matter continues to proceed, his case no longer puts the constitutional question at issue here before the Arkansas Supreme Court. As a result, *Thompson* necessarily fails to provide a basis for abstention, and this Court need not consider it.

*Burnett* is a state criminal proceeding against an indigent defendant. Mr. Burnett seeks a new pre-trial release hearing and a declaration of the right to counsel at such hearings. He argues that the Arkansas trial court's failure to provide him with assistance of counsel during his bail hearing violated the Arkansas Rules of Criminal Procedure and the Due Process and Equal Protection Clauses of the Fourteenth Amendment; the $350,000 bail set in his case violated the Eighth Amendment's protection against excessive bail and the Arkansas Constitution; the trial court erred in holding him without bond for an alleged probation violation absent a revocation petition; and his appeal is not moot, despite the fact that the day before the State's response was due to the Arkansas Supreme Court, it nolle prossed or dismissed the charges against Mr. Burnett.

Federal courts have "a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). "This duty is not, however, absolute." *Id.* "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction," provides "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).

Public Defender Defendants argue the instant litigation duplicates pending state proceedings, and under the *Colorado River* abstention doctrine, the Court should refrain from exercising its jurisdiction. Defendant Anglin contends *Younger* and *Brillhart* counsel in favor of abstention.

The Court examines each abstention doctrine below. It finds Defendants' arguments unavailing. The Court can discern no basis upon which it may refuse to exercise jurisdiction.

### A.   *Colorado River* Abstention

*Colorado River* recognizes that, in exceptional circumstances, wise judicial administration may warrant "the dismissal of a federal suit due to the presence of a concurrent state proceeding. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). To abstain under this doctrine, the Court must find: (1) the pending state and federal cases are "parallel" and (2) "exceptional circumstances" warrant abstention. *See Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009).

"Parallelism" requires more than simply the pendency of a state claim "based on the same general facts or subject matter as a federal claim and involving the same parties." *Fru-Con*, 574 F.3d at 535. Instead, the Court must find "substantial similarity" exists between the proceedings such that "there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Id.* To make such a finding, the Court compares the "sources of law, required evidentiary showings, measures of damages, and treatment on appeal" for each claim. *Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013) (quoting *Fru-Con*, 574 F.3d at 536).  "[I]f there is any doubt as to the parallel nature of the state and federal proceedings," the Court must exercise jurisdiction. *Fru-Con*, 574 F.3d at 536.

Defendants Parish and Saxton claim that Mr. Burnett's pending state case is sufficiently parallel to the instant litigation to warrant abstention. The Court disagrees.

"When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Window World Int'l, LLC v. O'Toole*, 21 F.4th 1029, 1033 (8th Cir. 2022) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).

Here, while Mr. Burnett, Ms. Farella, and Mr. Murphy challenge the same bail procedure, it is not certain that resolution of Mr. Burnett's case will fully dispose of the claims presented here. *Burnett* presents several questions to the Arkansas Supreme Court, making it entirely possible to fully resolve Mr. Burnett's appeal without reaching any issue that would impact, much less dispose of, Ms. Farella and Mr. Murphy's claims.

Even to the extent the Arkansas Supreme Court addresses the same substantive issue—the right to counsel at a bail hearing—it may not necessarily do so on any ground that is relevant here. Mr. Burnett argues the right is grounded in both Arkansas law and the Fourteenth Amendment to the federal Constitution; while Ms. Farella and Mr. Murphy bring suit under the Sixth Amendment.

*Burnett* is also postured differently. First, Mr. Burnett directly appealed the trial court's bail decision, so his claim regarding a right to counsel remains embedded in his criminal case. Second, while Mr. Burnett was apparently arrested on new charges, his brief before the Arkansas Supreme Court indicates bail was set and he was remanded to the state's custody for parole revocation. Ms. Farella and Mr. Murphy, in contrast, appeared before Judge Anglin solely on new charges. These differences, along with others, make it even less likely that a decision in Mr. Burnett's case will dispose of Ms. Farella and Mr. Murphy's claims.

Given this uncertainty, the Court cannot find sufficient parallelism to justify abstention under *Colorado River*. Furthermore, even if the Court held otherwise, Public Defender Defendants fail to demonstrate that exceptional circumstances warrant abstention.

Under the second prong of the *Colorado River* test, the Court considers six non-exhaustive factors:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Fru-Con*, 574 F.3d at 534 (quotations omitted). Courts "pragmatically apply [these factors] to advance the 'clear federal policy' of avoiding piecemeal adjudication." *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 926 (8th Circuit 2006) (citing *Moses*, 460 U.S. at 16, 21). Nevertheless, the balance should be "weighted in favor of the exercise of jurisdiction." *Moses*, 460 U.S. at 16.  A court's task in applying these factors "is not to find some substantial reason for the exercise of federal jurisdiction," but rather "to ascertain whether there exist 'exceptional' circumstances . . . to justify the *surrender* of that jurisdiction." *Id.* at 25–26 (emphasis in original).

Here, the first two factors are neutral. There are no property or forum convenience issues. There is some risk of piecemeal litigation, which "occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Nabholz Cons. Corp. v. Beck*, 699 F. Supp. 2d 1101, 1107 (E.D. Mo.

2010) (quoting *LaDuke v. Burlington N.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989)). Both suits ask the presiding court to find indigent defendants possess a right to counsel at bail hearings. However, the differences in parties, sources of law, remedies sought, and alleged facts make it unlikely, although not entirely impossible, that the tribunals will ultimately address the same issue.

 *Burnett* was filed before this one, and it is fully briefed. However, factual development regarding the bail hearing and the related procedures is more likely to occur first in this case. *Burnett* is before the Arkansas Supreme Court on a writ, and it is unclear that discovery on the relevant issues will occur. *Burnett* involves state law and different federal provisions than those at issue here. The instant matter implicates only federal law.

 Finally, although the Court agrees that the state courts are fully competent to adjudicate issues of constitutional interpretation, the sixth factor is neutral as it "counts for or against abstention and dismissal only where one of the forums is *inadequate* to protect a party's rights." *Fru–Con Const. Corp.*, 574 F.3d at 539 (emphasis in original) (internal quotation marks omitted).

 On balance, the factors do not demonstrate that exceptional circumstances warrant abstention. Therefore, even if *Burnett* were deemed parallel, the Court does not find abstention appropriate under *Colorado River*.

### B. *Brillhart* Abstention

 Judge Anglin urges the Court to abstain under the *Brillhart* doctrine. The Court finds it does not apply.

 In *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995), "'the Supreme Court considered the appropriate standard governing a district court's decision to dismiss or

stay a federal declaratory judgment action during the pendency of parallel state court proceedings and adopted the discretionary standard set forth' in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)." *Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 874 (8th Cir. 2000). "Under *Brillhart*, the district court must consider the scope and nature of the pending state court proceeding to ascertain whether the issues in controversy between the parties to the federal action, not foreclosed under applicable substantive law, can be better settled by the state court." *Id.* "If a district court finds the cases are parallel and that the issues in the federal action can be better settled by the state court, the district court must abstain because it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.'" *Consumers Ins. USA, Inc. v. Trexler*, 618 F. Supp. 3d 844, 847–48 (E.D. Mo. 2022) (quotation marks omitted) (quoting *Capitol Indem. Corp.*, 218 F.3d at 874–75).

Even if the Court were to find the cases present substantially the same claims, state law does not govern in both actions. Moreover, *Brillhart* applies only to actions brought under the Declaratory Judgment Act. It "may *not* apply when a party seeks a good faith injunction as well as declaratory relief." *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 795 (8th Cir. 2008) (emphasis added). Ms. Farella and Mr. Murphy's good faith plea for injunctive relief precludes application of *Brillhart*.

### C. *Younger* Abstention

Defendant Anglin also urges this Court to abstain under the *Younger* doctrine, which prohibits federal courts from interfering with certain state proceedings. *Younger v. Harris*, 401 U.S. 37 (1971).

In *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, the Supreme Court held that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." 491 U.S. 350, 368. In the context of *Younger*, that includes state criminal prosecutions. "Where there is a parallel, pending state criminal proceeding, federal courts must refrain from *enjoining* the state prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (emphasis added).

There are two more steps to the *Younger* inquiry. First, under *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), the Court must determine whether there is "(1) [an] ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges." *375 Slane Chapel Rd., LLC v. Stone Cnty.*, 53 F.4th 1122, 1125 (8th Cir. 2022). Second, if the Court concludes in the affirmative, it must finally consider whether "abstention [is] nevertheless inappropriate because an exception to abstention applies." *Id.* at 1127. These exceptions include (1) bad faith or harassment by state prosecution, (2) applicable state law "flagrantly and patently violative of express constitutional prohibitions," or (3) extraordinary circumstances such that there is a "sufficient threat of such great, immediate, and irreparable injury" absent federal injunctive relief. *Kugler v. Helfant*, 421 U.S. 117, 124–25 (1975) (quotations omitted).

Absent satisfaction of *Younger*'s three-part inquiry, the general rule applies: "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Sprint*, 571 U.S. at 73 (quoting *Colo. River*, 424 U.S. at 817).

Here, Defendant Anglin argues that *Younger* applies because the case would "impact an ongoing state criminal case," namely *Burnett v. Arkansas*. (Doc. 48, p. 11). This argument misses the mark. The *Sprint* Court wrote that *Younger* abstention is intended to "preclude[] federal *intrusion*," not mere impact, "into ongoing state criminal prosecutions." *Sprint*, 571 U.S. at 78 (emphasis added).  Abstention is not appropriate simply because a federal case raises issues that a state court may also address in an unrelated criminal prosecution.

The *Burnett* case does not constitute a parallel pending state criminal proceeding. The requested relief in this federal case would neither "enjoin[] the state prosecution," *id.* at 72, nor require the "day-to-day" monitoring of state courts that threatens the principles of comity and federalism underlying the *Younger* doctrine. *O'Shea v. Littleton*, 414 U.S. 488, 501 (1974).  Moreover, the instant litigation closely resembles the facts at issue in *Gerstein v. Pugh*. In *Gerstein*, the Supreme Court held that *Younger* did not apply where a requested injunction "was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution." 420 U.S. 103, 108 n.9 (1975). Similarly, here, Plaintiffs question the legality of pretrial detention absent assistance of counsel. Relief to Ms. Farella and Mr. Burnett would not "prejudice the conduct of the trial on the merits." *Id.* The cases do not even involve the same parties.

In sum, Defendant Anglin does not demonstrate *Younger*'s first prong, the presence of an exceptional circumstance. Accordingly, *Younger* does not apply.

## V.    FAILURE TO STATE A CLAIM

Defendant Anglin contends Ms. Farella, Mr. Murphy, and others similarly situated have no right to counsel at a bail hearing under the Sixth Amendment and, accordingly, moves to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[9]

### A.    Legal Standard

To survive a 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).

---

[9] Plaintiffs also allege due process and equal protection claims. The Court limits its discussion to the Sixth Amendment. While Judge Anglin does state that Plaintiffs' claims are all dependent upon a right to counsel at the bail hearing, (Doc. 48, p. 3–4), his motion meaningfully discusses only the Sixth Amendment claim.

In his Reply (Doc. 54), Judge Anglin expands on his objection to Plaintiffs' Due Process and Equal Protection Clause claims by arguing the Sixth Amendment ultimately subsumes both. He writes, "Therefore, Separate Defendants' arguments regarding the fact that Plaintiffs' Sixth Amendment rights have not been violated also apply to Plaintiffs' due process and equal protection claims under the Fourteenth Amendment. Thus, Plaintiffs' due process and equal protection claims fail for the same reasons." *Id.* at p. 4 (citation omitted).

For now, the Court declines to reach this argument. Were the Court to accept Judge Anglin's argument as correct, then it would not need to reach the issue: The Court finds Plaintiffs state a claim with respect to the right to counsel under the Sixth Amendment, so, by Judge Anglin's logic, the same reasoning applies to the Due Process and Equal Protection claims, thereby preserving both. Were the Court to reject Judge Anglin's argument—such that the Due Process and Equal Protection claims do not rise and fall with the Sixth Amendment—then Judge Anglin's briefing provides no argument upon which the Court might dismiss the Due Process and Equal Protection claims.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 663)). In ruling, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted). The Court may rely on "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010).

Still, the complaint must contain sufficient facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Id.* A court is not required to "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

### B.    Analysis

Plaintiffs allege indigent criminal defendants possess a constitutional right to effective assistance of counsel during Arkansas's Rule 8.1 hearing. They contend that the proceeding marks the beginning of prosecution, and because the pretrial detention and bail determinations hold significant consequences for the accused, defense counsel must be present. Defendant Anglin disputes both contentions. The Court finds that Plaintiffs state a claim upon which relief may be granted.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right "attaches" only when "a prosecution is commenced." *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 198 (2008) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)). The Supreme Court pegs commencement of prosecution to "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.*[10]

In *Rothgery*, the Court expressly held that the right to counsel attaches at "first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." 554 U.S. at 194. The Rule 8.1 hearing, as alleged in Plaintiffs' Amended Complaint and described by the Arkansas Rules of Criminal Procedure, does precisely this. Accordingly, the Court finds that, by the Rule 8.1 hearing, "the government has used the judicial machinery to signal a commitment to prosecute," *id.* at 198, and the right to counsel has attached.

Judge Anglin neither discusses the relevance of *Rothgery* nor attempts to distinguish it. Instead, he argues, "the bail hearings were not sufficiently adversarial and were more administrative." (Doc. 48, p. 7). That is not the standard with respect to attachment. To determine whether a criminal defendant's Sixth Amendment right to counsel has attached, the court considers not whether the Rule 8.1 hearing itself is adversarial but instead whether, at that point in time, "'the government has committed itself to prosecute,' 'the adverse positions of government and defendant have solidified,'

---

[10] Prior to the initiation of adversarial criminal proceedings, a suspect's right to assistance of counsel derives from the Fifth Amendment's protection.

and the accused 'finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'" *Rothgery*, 554 U.S. at 198 (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).

The Court concludes *Rothgery* is dispositive: At the Rule 8.1 hearing, "the government has used the judicial machinery to signal a commitment to prosecute," and the right to counsel has attached. *Id.*

Attachment alone, however, does not promise the right to assistance of counsel. "[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citing *United States v. Wade*, 388 U.S. 218, 227–228, (1967); *Powell v. Alabama*, 287 U.S. 45, 57 (1932)). A "critical stage" is one that "h[olds] significant consequences for the accused." *Woods v. Donald*, 575 U.S. 312, 315 (2015) (quoting *Bell v. Cone*, 535 U.S. 685, 696 (2002)).

In assessing whether the Rule 8.1 hearing constitutes a critical stage, the Court considers "whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Coleman v. Alabama*, 399 U.S. 1, 7 (1970). The inquiry is a functional one, and the contours of local procedure matter. *See, e.g., White v. Maryland*, 373 U.S. 59, 60 (1963) ("Whatever may be the normal function of the 'preliminary hearing' under Maryland law, it was in this case as 'critical' a state as arraignment under Alabama law.").

Although the Supreme Court has held a range of pretrial proceedings to be "critical," including arraignments, post-indictment interrogations, post-indictment lineups,

the entry of a guilty plea, and negotiation of a plea deal,[11] it has not directly addressed bail. Nevertheless, its precedent suggests that the Supreme Court recognizes the significant advantages inherent in counsel's assistance at a bail hearing—and that the pretrial detention determination may represent a critical stage. In *Coleman v. Alabama*, for example, the Court held that where "the purposes of a preliminary hearing are to determine whether there is sufficient evidence against the accused to warrant presenting his case to the grand jury and, if so, to fix bail if the offense is bailable," the hearing constitutes a critical stage. 399 U.S. at 8. The Court emphasized the practical importance of Alabama's preliminary hearing, noting that "counsel can . . . be influential at the preliminary hearing in making effective arguments on such matters as the necessity for an early psychiatric examination or bail." *Id.* at 9. The Court held that "[t]he inability of the indigent accused on his own to realize these advantages of a lawyer's assistance compels the conclusion that the Alabama preliminary hearing is a critical stage' of the State's criminal process at which the accused is as much entitled to such aid (of counsel) as at the trial itself." *Id.* at 9–10 (cleaned up). *See also Smith v. Lockhart*, 923 F.2d 1314, 1319 (8th Cir. 1991) ("The Supreme Court has recognized the special role played by counsel at preliminary hearings in which bail reduction motions are considered.") (citing *Coleman*, 399 U.S. at 9)).

Here, assuming the allegations in the Amended Complaint to be true, the Court concludes the pretrial detention and bond inquiry constitutes a critical stage. Plaintiffs

---

[11] *See Missouri v. Frye*, 566 U.S. 134, 140 (2012) (collecting cases). *See also id.* (plea negotiations); *Hamilton v. Alabama*, 368 U.S. 52 (1961) (arraignment); *Massiah v. United States*, 377 U.S. 201 (1964) (post-indictment interrogation); *Wade*, 388 U.S. 218 (post-indictment lineup); *Argersinger v. Hamlin*, 407 U.S. 25 (1972) (guilty plea).

allege "[a]n unrepresented defendant may . . . lose valuable time to properly prepare a defense." (Doc. 34, p. 14). In Benton County, Plaintiffs claim that indigent criminal defendants unable to post bail are unlikely to meet with counsel until the next hearing, which is often more than a month away. *Id.* The ability to conduct fact investigation and begin "formulating a defense strategy" is impaired. *Id.*

Detention may also change the incentive structure. As a recent Stanford Law Review article notes:

> [D]etention alters the incentives for fighting a charge. A detained defendant generally has less to lose by pleading guilty; detention may have already caused major disruption to her life. And whereas for a released defendant the prospect of a criminal sentence--custodial or otherwise-- represents a serious loss of liberty, for a detainee it is, at worst, an extension of the status quo.

Paul Heaton, Sandra Mayson, Megan Stevenson, The Downstream Consequences of Misdemeanor Pretrial Detention, 69 Stan. L. Rev. 711, 722 (2017). The same article finds that, in an analysis of misdemeanor cases in Harris County, Texas, "detained defendants are 25% more likely than similarly situated releasees to plead guilty, are 43% more likely to be sentenced to jail, and receive jail sentences that are more than twice as long on average." *Id.*

Furthermore, "pretrial detention puts defendants at a profound disadvantage in plea negotiations vis-à-vis the position they would be in if negotiating from freedom." *Id.* at 776. "[A]pproximately 17% of the detained misdemeanor defendants who pleaded guilty would not have been convicted at all but for their detention." *Id.*

The initial bail determination risks substantial prejudice to the defendant. The benefits of legal assistance are obvious. Under Arkansas law, courts consider the following factors in assessing pretrial release:

- The defendant's employment status, history and financial condition.

- The nature and extent of his family relationships.

- His past and present residence.

- His character and reputation.

- Persons who agree to assist him in attending court at the proper times.

- The nature of the current charge and any mitigating or aggravating factors that may bear on the likelihood of conviction and the possible penalty.

- The defendant's prior criminal record, if any, and, if he previously has been released pending trial, whether he appeared as required.

- Any facts indicating the possibility of violations of law if the defendant is released without restrictions.

- Any other facts tending to indicate that the defendant has strong ties to the community and is not likely to flee the jurisdiction.

Ark. R. Crim. P. 8.5(b). Arkansas law also provides guidance for setting bail. The judicial officer must determine that no other conditions will reasonable ensure the appearance of the defendant in court. *Id*. 9.2(a). In setting the amount of bail, the judicial officer considers all information relevant to the risk of willful nonappearance, including:

- The length and character of the defendant's residence in the community.

- His employment status, history and financial condition.

- His family ties and relationship.

- His reputation, character and mental condition.

- His past history of response to legal process.

- His prior criminal record.

- The identity of responsible members of the community who vouch for the defendant's reliability.

- The nature of the current charge, the apparent probability of conviction and the likely sentence, in so far as these factors are relevant to the risk of nonappearance.

- Any other factors indicating the defendant's roots in the community.

Ark. R. Crim. P. 9.2.

Criminal defendants, however, are unlikely to be familiar with the law governing pretrial release, making it difficult to raise mitigating facts. "Preliminary hearings can be complex and difficult to navigate for lay individuals and many, following arrest, lack access to other resources that would allow them to present their best case." *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314 (E.D. La. 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019). "Unrepresented defendants . . . are in no position at an initial bail hearing to present the best, most persuasive case on why they should be released pending trial." *Booth v. Galveston Cnty.*, 2019 WL 3714455, at *11 (S.D. Tex. Aug. 7, 2019), *report and recommendation adopted as modified*, 2019 WL 4305457 (S.D. Tex. Sept. 11, 2019). "A lawyer would unquestionably provide invaluable guidance to a criminal defendant facing a bail determination." *Booth*, 2019 WL 3714455, at *11. Here, for example, Judge Anglin imposed bail in an amount much more than that requested by the prosecutor. That bail was ultimately reduced when Plaintiffs each met with their respective attorneys more than a month later.

An unrepresented defendant's lack of legal knowledge often precludes effective advocacy with respect to both release and bail. But it also risks more far-reaching consequences. As Plaintiffs explain, "[a]n unrepresented defendant may offer up information that is detrimental to his case in an attempt to persuade the judge to let him out of jail." (Doc. 34, p. 13).

Accordingly, the Court concludes that pretrial detention has a substantial impact on the defendant's right to a fair trial, and second, counsel provides critical assistance to the accused during a bail hearing, thereby reducing the likelihood of detention and conviction.

## VI.   JOINDER

The Public Defender Defendants argue the Amended Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(7) because the state of Arkansas is an indispensable party that cannot be joined under Rule 19(b).

Rule 19 mandates dismissal if (1) the State of Arkansas is an absent yet required party; (2) the Court cannot join the State; and (3) the case cannot proceed "in equity or good conscience" without the State. *Id.* The Court finds the State of Arkansas is not a required party, and, even if it was, the Court may nevertheless proceed in "equity or good conscience" without the State's presence.

Under Rule 19(a), certain persons not named as parties to the litigation are considered "required" and must be joined if feasible. Such absent-yet-required persons include those whose absence leaves the court unable to "accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A), and those with an interest in the action and whose absence may impair the ability to protect that interest, *id.* 19(a)(1)(B)(i), or put an existing party at risk of incurring inconsistent obligations due to that interest, *id.* 19(a)(1)(B)(ii). According to Defendants, the State of Arkansas is a required party under any of the above definitions.

Public Defender Defendants claim that Arkansas is a required party because, in its absence, "the court cannot accord complete relief among existing parties," *see* Fed.

36

R. Civ. P. 19(a)(1)(A). Defendants argue: "The State of Arkansas relies exclusively on the APDC to provide an appropriate level of legal services to indigent persons throughout the entire state[,] . . . [and] [t]he APDC, in turn, relies exclusively on funding from the State to carry out its work." (Doc. 62, pp. 4–5). The relief requested by Plaintiffs would, according to Defendants, "require additional public defenders and more funding, which requires State approval." *Id.* at p. 5 (citing Ark. Code Ann. §§ 16-87-215(3), 16-10-310, and 16-87-301). In essence, they argue, "the relief Plaintiffs seek (i.e., a permanent injunction and a declaration that 'indigent persons must have appointed counsel present al bail hearings') is in essence a request for increased funding to the APDC." *Id.* Accordingly, Defendants maintain, such relief "cannot be accorded without adding the State of Arkansas as a party." *Id.*

Defendants also argue that Arkansas has an "interest in this matter, namely how much funding is appropriated to the APDC and how those State funds are spent." *Id.* They contend that granting Plaintiffs' request without the State's involvement would "impede that [sic] State's ability to appropriate funding" and "put APDC at substantial risk of incurring administrative, staffing, and other obligations that it could not fulfill absent the State's involvement." *Id.* at pp. 5–6.

Each of these arguments relies on a mischaracterization of the relief sought by Plaintiffs. Plaintiffs do not in fact seek "increased funding to the APDC." Should the Court award Plaintiffs the declaration they seek—that indigent persons must have counsel at bail hearings—Defendants must, of course, comply. But *how* they do so is up to them. The Court will not order Defendants to hire more public defenders, and there is no reason to believe that an increase in hiring constitutes the sole method by which APDC can

remedy the challenged conduct. As Plaintiffs note, other Arkansas counties manage to provide indigent defendants with legal representation at bail hearings.

To characterize Plaintiffs' requested relief as "a request for increased funding" would render the *Ex parte Young* exception to sovereign immunity meaningless in many circumstances. As noted, "under *Ex parte Young*, a federal court may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury." *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Defendants' argument would mean that, where an injunction may have an ancillary effect on the state treasury, it is therefore impossible for a court to afford complete relief absent the participation of the state. Such a rule would result in many more dismissals under Rule 12(b)(7) and seems at odds with much of sovereign immunity doctrine. Defendants do not address any of these inconsistencies.

The actual issue here is whether claims brought against state officials may proceed in the absence of the state itself. Defendants claim that awarding Plaintiffs' their requested relief would impede the state's ability to appropriate funding. But each Defendant was sued in their official capacity and is represented by either the Arkansas Attorney General's Office or private counsel paid for by the State of Arkansas. It is unclear why Defendants' presence in this litigation is inadequate to represent the State's interests.

## VII.    CONCLUSION

Separate Defendants Parrish and Saxton's ("Public Defender Defendants") Motion to Dismiss (Doc. 61) and Separate Defendant Anglin's Motion to Dismiss (Doc. 47) are **DENIED.**

**IT IS SO ORDERED** on this 5th day of August, 2023.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE