IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


ABIGAIL FARELLA AND LOGAN W. MURPHY,
on behalf of themselves and all others                    PLAINTIFFS
similarly situated


v.                                CASE NO. 5:22-cv-05121TLB


DISTRICT JUDGE A.J. ANGLIN,
GREGG PARRISH, EXECUTIVE
DIRECTOR OF THE ARKANSAS PUBLIC
DEFENDER COMMISSION and JAY SAXTON,
CHIEF BENTON COUNTY PUBLIC DEFENDER              DEFENDANTS


## PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS

COME NOW the Plaintiffs, by and through undersigned counsel, and for their

Statement of Undisputed Material Facts, state:

1) Under Administrative Order 18 from the Arkansas Supreme Court, district

    judges in Arkansas are allowed to conduct 8.1 bond hearings, performing the

    duty of a circuit court judge. **Exhibit 1, Deposition of A.J. Anglin, 6:24-25, 7:4,**

    **15:4-12.**

2) In Benton County, there are four district judges, all who conduct bond hearings:

    Judge Chris Griffin, Judge Ray Bunch, Judge Jeff Conner, and Judge A.J. Anglin.

    Each judge does 25% of the bond hearings and they divide it up on a week-by-

week basis, roughly 13 weeks a year. **Exhibit 1, Deposition of A.J. Anglin, 11:20-25, 12:1-25, 13:1-10.**

3) Judge Anglin conducts his bail hearings at 6:00 a.m. in the morning, or a little bit later. **Exhibit 1, Deposition of A.J. Anglin, 17:6-11.**

4) Judge Anglin has not spoken to Chief Public Defender Jay Saxton about having Benton County public defenders appear at bail hearings. **Exhibit 1, Deposition of A.J. Anglin, 21:7-9.**

5) Judge Anglin wishes that public defenders would be present for bail hearings. He believes it would be beneficial for the judicial system. **Exhibit 1, Deposition of A.J. Anglin, 22:9-17.**

6) Whenever Judge Anglin conducts bond hearings, he follows Administrative Rules 8.1, 8.2, and 8.3. He advises the defendants of their Miranda rights, what their charges are, the number of charges, and the classification. He then inquires about their employment, where they live, and some other inquiries that would impact whether they are cited out or required to have a bond. **Exhibit 1, Deposition of A.J. Anglin, 22:9-17.**

7) After he goes through that inquiry, he sets a bond. After he sets the bond, he then goes through an indigency form with the defendants. This indigency form is different than the form used by the circuit judges in Benton County. **Exhibit 1, Deposition of A.J. Anglin, 25:22-25; 26:1-3, 57:12-25, 58:1-5.**

8) The difference in the indigency forms is as follows: 1) the circuit court form is filled out by the defendant and the bond hearing form is filled out by the judge as he asks questions; 2) the circuit judge form is primarily used to determine if a public defender user fee will be assessed. **Exhibit 1, Deposition of A.J. Anglin, 57: 16-25, 61:11-19.**

9) The form used by Judge Anglin and the other district judges is not the "Affidavit of Indigency" that has been approved for use by the Arkansas Public Defender Commission and required by statute. **Exhibit 1, Deposition of A.J. Anglin, Ex. 6.**

10) Judge Anglin appoints the public defender to approximately 95% of defendants at bond hearings. **Exhibit 1, Deposition of A.J. Anglin, 27:19-23.**

11) Judge Anglin feels that a public defender at bond hearings would be helpful because he continually reminds defendants that they have the right to remain silent and often people incriminate themselves when they are trying to be helpful. He feels a public defender would be able to have more influence over whether the person is going to talk about the facts of the case. **Exhibit 1, Deposition of A.J. Anglin, 28:2-15.**

12) Judge Anglin will not allow witnesses at the bail hearings. He does not believe he has the authority to conduct hearings that allow witnesses. If someone wanted to bring a witness, Judge Anglin would reset the bail hearing, contact the Administrative Judge Tom Smith, and the case would then be handled by one of

the two circuit judges who has a court reporter. **Exhibit 1, Deposition of A.J. Anglin, 31:16-25, 32:1-25, 33:1-25, 34:1-22.**

13) Judge Anglin allows attorneys to review the Probable Cause Affidavits at bail hearings, and encourages them to take a photo on their phone. **Exhibit 1, Deposition of A.J. Anglin, 33:23-25, 34:1-9.**

14) If an attorney attended a bail hearing, Judge Anglin would listen to any argument and encourage them to make a diligent argument for their client. **Exhibit 1, Deposition of A.J. Anglin, 34:10-21.**

15) Rule 8.5(b)(iv) includes "character and reputation" as one of the factors to be assessed at a bond hearing. Judge Anglin typically does not ask about character and reputation because it will likely cause someone to incriminate themselves. **Exhibit 1, Deposition of A.J. Anglin, 35:17-25, 36:1-11.**

16) Judge Anglin would allow an attorney to state that family members have attended the hearing and would make sure the defendant made his upcoming court dates. **Exhibit 1, Deposition of A.J. Anglin, 38:1-13.**

17) Judge Anglin believes that the hearings that he is conducting at the Benton County Jail are considered first appearances, and not preliminary hearings. He does not believe that he is allowed to conduct preliminary hearings, as they are adversarial. Furthermore, he does not allow witnesses because he thinks that

turns the hearing into a preliminary hearing rather than a first appearance. **Exhibit 1, Deposition of A.J. Anglin, 39:15-25, 40:1-22.**

18) If a defendant wants to call witnesses regarding the facts of the case, Judge Anglin would confer with Administrative Judge Tom Smith. He states that nothing in the rules states that he may allow testimony over the facts of the case at the first appearance. **Exhibit 1, Deposition of A.J. Anglin, 41:24-25, 42:1-12.**

19) Bail is set to ensure that someone makes all of their court appearances on their case. Judge Anglin considers whether someone has shown up in the past as one factor in his assessment to set bail. **Exhibit 1, Deposition of A.J. Anglin, 44:3-6.**

20) If a lawyer could pull a defendant's records and show Judge Anglin that the defendant, who has extensive criminal history, has always shown up to court, the Judge would take that into consideration and would consider that very helpful information. **Exhibit 1, Deposition of A.J. Anglin, 45:14-21.**

21) If a mother and father came to the bond hearing, Judge Anglin would consider that a positive factor when assessing bond. **Exhibit 1, Deposition of A.J. Anglin, 46:5-25; 47:1-9.**

22) Judge Anglin frequently cites people out even if the prosecutor has recommended a bond. **Exhibit 1, Deposition of A.J. Anglin, 47:16-25, 48:1-8.**

23) Judge Anglin does not allow signature bonds. He feels bondsman are very beneficial in getting someone to court. **Exhibit 1, Deposition of A.J. Anglin, 48:9-25, 50:1-7.**

24) Judge Anglin does not "place the defendant under the care of a qualified person or organization agreeing to supervise the defendant and assisting him in appearing to court," as allowed by Arkansas Rule 9.1(b)(1). **Exhibit 1, Deposition of A.J. Anglin, 50:8-19.**

25) Judge Anglin does not "release the defendant during the working hours but require him to return to custody at a specified time," as allowed by Rule 9.1(b)(4). **Exhibit 1, Deposition of A.J. Anglin, 50:20-25, 51:1-10.**

26) Judge Anglin does not make defendants wear GPS monitors as a condition of release. **Exhibit 1, Deposition of A.J. Anglin, 51:11-13.**

27) Judge Anglin does not read the factors to consider when setting bail word for word. He specifically does not ask a person's mental condition. He does not want to embarrass a defendant. **Exhibit 1, Deposition of A.J. Anglin, 54:11-24.**

28) Judge Anglin does have the ability to bring the defendants in one at a time. **Exhibit 1, Deposition of A.J. Anglin, 55:13-14.**

29) Judge Anglin appoints public defenders at the first appearance because he thinks it is extremely important that a defendant is being appointed a public defender at

their first contact with a judge. He is an advocate for people having representation. **Exhibit 1, Deposition of A.J. Anglin, 55:19-25.**

30) Judge Anglin considers whether to issue a No Contact Order on certain cases, and three of the four judges use the same form. **Exhibit 1, Deposition of A.J. Anglin, 69:10-25, 70:1-25.**

31) The jail provides Judge Anglin a list of names before the bond hearings, and he generally sees everyone on the list. He reviews the files for an hour or two before anyone enters the courtroom. He reads every affidavit word for word on every case, looks at every single revocation warrant, and then he determines who he will see for a bond hearing. **Exhibit 1, Deposition of A.J. Anglin, 71:5-18.**

32) Sometimes the judge will see a defendant even if the prosecutor has not made a bond recommendation yet. **Exhibit 1, Deposition of A.J. Anglin, 72:12-18.**

33) Three of the four district judges conduct bond hearings in person, but Judge Jeff Conner conducts them solely through video. **Exhibit 1, Deposition of A.J. Anglin, 73:1-17.**

34) For defendants who do not speak English, the Judge utilizes Language Line Solutions to interpret during the bond hearings. **Exhibit 1, Deposition of A.J. Anglin, 75:18-25, 76:1-14.**

35) If an attorney presented a document for the Judge to consider, like a pay-stub or work identification, the Judge would consider that when setting bond. He will

not allow an attorney to call a police officer to the stand as that would allow

cross-examination. **Exhibit 1, Deposition of A.J. Anglin, 83:1-25, 84:1-25, 85:1.**

36) Judge Anglin does not know how long it would take for a defendant to have a

bond hearing in front of one of the circuit judges if the defendant wanted to call

witnesses. **Exhibit 1, Deposition of A.J. Anglin, 86:4-17.**

37) Judge Anglin believes that the procedure for bond hearings would have to

change if public defenders started appearing, but does not specifically know

what would need to change. **Exhibit 1, Deposition of A.J. Anglin, 87:7-13.**

38) District judges attend CLE classes twice a year at judicial conferences, and

sometimes training regarding bond hearings is mentioned at those meetings.

**Exhibit 1, Deposition of A.J. Anglin, 88:23-25, 89:1-7.**

39) Judge Anglin would have a discussion with the public defenders about changing

the time for bond hearings if they began requesting to show up and have a

change in time. **Exhibit 1, Deposition of A.J. Anglin, 92:3-10.**

40) Judge Anglin agrees that a person with a large salary can be considered indigent

for the purpose of appointment of a public defender. **Exhibit 1, Deposition of

A.J. Anglin, 94:4-10.**

41) Before determining indigency, Judge Anglin asks the defendant if they want to

be appointed a public defender. If they do not, he does not determine indigency.

**Exhibit 1, Deposition of A.J. Anglin, 95:2-25, 96:1-4.**

42) When determining whether to set a cash-only or a corporate-surety bond, Judge Anglin primarily looks at the classification of felony, but also considers what kind of drug the person allegedly possessed in possession of drugs cases. **Exhibit 1, Deposition of A.J. Anglin, 100:15-25, 101:1-22.**

43) On June 20, 2022, Logan Murphy was arrested for felony Fleeing and Reckless Driving and taken to the Benton County Jail.  **Exhibit 1, Deposition of A.J. Anglin, Ex. 1.**

44) Once at the jail, he was booked in, his fingerprints taken, and went into holding, or "pod." A pod is a big area for inmates that looks like a cafeteria area at school, just "a lot more depressing." **Exhibit 2, Deposition of Logan Murphy, 16:1-15.**

45) Fewer than thirty inmates were in the pod, and there are around twenty pods in the jail. To sleep, Murphy shared a cell with another inmate. **Exhibit 2, Deposition of Logan Murphy, 17:1-18.**

46) When he first arrived, he was in a full lockdown pod, but later went to a pod with regular door handles. **Exhibit 2, Deposition of Logan Murphy, 18:7-21.**

47) In order to communicate to the outside world, the jail has an area with 2-3 phones, a kiosk for commissary and medical requests, and a kiosk to message one's family. **Exhibit 2, Deposition of Logan Murphy, 16:3-10.**

48) Murphy ate his meals on the ground or at a table if he was invited in his pod area. **Exhibit 2, Deposition of Logan Murphy, 19:14-23.**

49) Murphy went to the courtroom with several other inmates or "newbies" for his bail hearing. He was not in his regular street clothes, but in orange "stripes." Orange stripes indicate that Murphy "ran" from police and indicated that he was a flight risk. He had not tried to escape the jail, but was put in orange stripes because of the felony fleeing charge. **Exhibit 2, Deposition of Logan Murphy, 21:1-24.**

50) Murphy was not handcuffed when he went to his bond hearing, but had to keep his hands behind his back. **Exhibit 2, Deposition of Logan Murphy, 24:24-25, 25:1-5.**

51) Judge Anglin read Murphy his rights, asked if he understood those rights, and if Murphy had an attorney, which he did not. **Exhibit 2, Deposition of Logan Murphy, 26:7-21, 36:5-22.**

52) Judge Anglin was provided with a Probable Cause Affidavit, which is a sworn statement by an officer about the events leading up to arrest. The Probable Cause Affidavit also contains a recitation of the defendant's criminal history, including any failures to appear, and a recommendation by a prosecutor of a bond amount. The bond recommendation for Logan Murphy was $25,000. **Exhibit 1, Deposition of A.J. Anglin, Ex. 1.**

53) Judge Anglin set Murphy's bond at $40,000 and appointed a public defender to represent him. **Exhibit 2, Deposition of Logan Murphy, 26:11-14, 30:1-2.**

54) Murphy did not request an attorney to be present with him at the bond hearing. **Exhibit 2, Deposition of Logan Murphy, 30:3-8.**

55) At the time of his bond hearing, Murphy, who has always been poor, had never even seen $10,000 in his life. **Exhibit 2, Deposition of Logan Murphy, 30:20-25, 31:1.**

56) Murphy did not ask the judge why he set the bail at $40,000. He did not want to argue in case the judge would raise his bail. He just wanted to get out of the bond hearing and keep his cool. **Exhibit 2, Deposition of Logan Murphy, 30:2-12.**

57) Murphy later pled guilty to felony Fleeing and received credit for time served, five years probation, and was sentenced under A.C.A. §16-93-301, the Arkansas First Time Offenders Act, which means Murphy is not considered a convicted felon and can have his record sealed and expunged after successfully completing probation. **Exhibit 1, Deposition of A.J. Anglin, Ex. 2.**

58) Abigail Farella was arrested on May 20, 2022, for Possession of a Controlled Substance, Possession of Drug Paraphernalia, and Shoplifting. **Exhibit 1, Deposition of A.J. Anglin, Ex. 3.**

59) She was taken to the jail and went through the booking process. She sat in the booking chairs for about 10 1/2 hours. **Exhibit 3, Deposition of Abigail Farella, 12:21-25, 13:1.**

60) Before her bail hearing, she changed into a solid orange jail outfit. **Exhibit 3, Deposition of Abigail Farella, 13: 11-13, 14:13-19.**

61) Between her arrest and the bail hearing, she was in a pod housed with six other females. The pod was one cell, with three women sleeping in beds and three on the floor. **Exhibit 3, Deposition of Abigail Farella, 14:24-25, 15:1-8.**

62) The jail had phones in the dayroom, but Farella was not allowed to use them despite requesting to make a phone call. **Exhibit 3, Deposition of Abigail Farella, 15:9-21.**

63) When it was time for her bail hearing, Farella was handcuffed in the front and taken to the courtroom. She was the only one handcuffed. **Exhibit 3, Deposition of Abigail Farella, 17:18-25, 18:3-8.**

64) Judge Anglin read Farella her charges, asked if she was employed, determined that she was indigent, set her bond, and gave her a court date. **Exhibit 3, Deposition of Abigail Farella, 18:13-25.**

65) Judge Anglin had a Probable Cause Affidavit for Farella, which included a bond recommendation from the prosecutor of $2500. **Exhibit 1, Deposition of A.J. Anglin, Ex. 3.**

66) Judge Anglin set Farella's bond at $10,000. **Exhibit 1, Deposition of A.J. Anglin, Ex. 3.**

67) Judge Anglin considered Farella's criminal history and lack of ties to the state of Arkansas when determining her bond amount. He felt $2500 was inappropriate and too low. **Exhibit 1, Deposition of A.J. Anglin, 66:5-25, 67:1-25, 68:1-15.**

68) Ultimately, Farella pled only to a misdemeanor Theft of Property charge. She did not plead guilty to, and was not found guilty of, any felony offenses. **Exhibit 1, Deposition of A.J. Anglin, Ex. 3.**

69) At the time of Murphy and Farella's bond hearings, the bond hearings were not recorded. Bond hearings are now being recorded in Benton County. **Exhibit 1, Deposition of A.J. Anglin, 23:16-25, 17:1-25, 18:1-2.**

70) Gregg Parrish is the Executive Director of the Arkansas Public Defender Commission. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

71) Jay Saxton is the Chief Public Defender assigned to Benton County, Arkansas, in the 19th Judicial Circuit West Division. He is an employee of the State of Arkansas. Gregg Parrish is his supervisor. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

72) Gregg Parrish, and Jay Saxton, and all parties, are within the jurisdiction of the United States District Court, Western District of Arkansas, Fayetteville Division. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

73) On or about May 22, 2022, Farella was taken to the courtroom of the Benton County Jail for a pretrial release hearing (hereafter referred to as a "bail hearing") before District Judge A.J. Anglin.  These hearings are also referred to as Rule 8.1 or Probable Cause hearings throughout the State. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

74) Farella did not have an attorney representing her at her bail hearing, as the Court had not made a previous finding of indigency as required by Ark. Code Ann. § 16-87-213. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

75) Prior to 2024, Benton County bail hearings conducted by district court judges never had a record. Currently, the jail courtroom is set up with a recording device. However, by statute, Arkansas's District Courts are not recognized as official courts of record.  Ark. Code Ann. § 16-10-104; *see also Mahoney v. Derrick*, 2022 Ark. 27 (Hudson, J., concurring). Nor is there an actual court reporter present for the proceedings. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

76) Murphy did not have an attorney representing him at his bail hearing, as the Court had not made a previous finding of indigency as required by Ark. Code Ann. § 16-87-213). **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

77) Judge Anglin, along with the other three district judges in Benton County, rotate on conducting bail hearings for individuals arrested and housed in the Benton County Jail. Judge Anglin conducts approximately 25% of all bail hearings in Benton County, Arkansas, including both felonies and misdemeanors. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

78) The four (4) district judges conducting Rule 8.1 hearings in Benton County do not follow the same schedule as to the time of day or as to the day of the week. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

79) Judges in Benton County do not require the presence of public defenders at bail hearings. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

80) When bail hearings are conducted at the Benton County Jail, no representatives from the prosecutor's office or public defender's office are physically or virtually present. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

81) Arkansas Rule of Criminal Procedure 8.5 provides a list of relevant factors for the judicial officer to assess, such as:

- The defendant's employment status, history, and financial condition;

- The nature and extent of his family relationships;

- His past and present residence;

- His character and reputation;

- Persons who agree to assist him in attending court at the proper times;

- The nature of the current charge and any mitigating or aggravating factors that may bear on the likelihood of conviction and the possible penalty;

- The defendant's prior criminal record, including history of violence, if any, and, if he previously has been released pending trial, whether he appeared as required;

- Any facts indicating the possibility of violations of law if the defendant is released without restrictions, including the risk that the defendant will commit a serious crime, intimidate witnesses, harass or take retaliatory action against any witness, or otherwise interfere with the administration of justice or post a danger to the safety of any other person; and

- Any other facts tending to indicate that the defendant has strong ties to the community and is not likely to flee the jurisdiction. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

82) The Arkansas Public Defender Commission was created by Act 1193 of 1993, codified at Arkansas Code Annotated §§16-87-201 through -214, to address issues and concerns related to the representation of indigent criminal defendants throughout Arkansas. The Commission is composed of seven members who have been appointed by the Governor of Arkansas. Those members appoint an

Executive Director to oversee the direct operations of the Commission's attorneys, investigators, and staff. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

83) Gregg Parrish is the Executive Director of the Arkansas Public Defender Commission and oversees the day-to-day operations of public defenders throughout Arkansas. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

84) Mr. Parrish has not instructed the public defenders in Benton County to attend initial appearances at bail hearings. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

85) Jay Saxton is the Chief Public Defender for Benton County, Arkansas. He is the direct supervisor for the public defenders in Benton County, and an employee of the State of Arkansas. Mr. Parrish is his supervisor. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

86) He has not provided public defenders for initial bail hearings in district courts. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

87) The Arkansas Public Defender Commission ("APDC") is afforded 186 full-time positions by the Arkansas legislature. At present, the APDC employs 117 full-time attorneys and 112 part-time attorneys. The APDC currently has nine (9) vacant full-time attorney positions and eight (8) vacant part-time attorney

positions. Of this total, 19 full-time positions and three (3) part-time positions handle administrative duties, appeals, capital cases, or conflicts work and never are involved in a case at the first appearance stage. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

88) Benton County currently has 15 full-time public defender positions: 6.5 state-funded public defenders and 8.5 attorney positions funded by Benton County as authorized by Ark. Code Ann. § 16-87-302 (b)(2), although the county is under no lawful duty to provide these positions. Benton County also has an additional five attorney positions paid for with American Rescue Plan (COVID) funding. This funding is not permanent and will expire on or about September 2024. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

89) By contrast, the Benton County prosecutors' office has 23 total attorneys, six of which are county positions. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

90) In Benton County, bail hearings are not set at a specific time. Bail hearings in Benton County are at irregular times, and are dependent on when the district judge wants to hold them, whether that is 6:00 am in the morning or 8:00 pm at night, and whether it is a weekend or holiday. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

91) Conversely, in neighboring Washington County, Rule 8.1 bail hearings are set every Monday, Wednesday, and Friday at 8:00 am in the mornings. Both prosecutors and public defenders are present for bail hearings in Washington County. A court reporter is also present making a record. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

92) Washington County is able to accomplish having a court reporter, public defender, and prosecutor at the Rule 8.1 bail hearings due to the fact that Washington County also handles all felony arraignments at the same time and in the same location. Further, whether a defendant is in custody or free, they are required to attend an arraignment at the Washington County detention facility, and Washington County has authorized their district judges to conduct arraignments in felony cases. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

93) Felony cases in Benton County are divided into one of two criminal court divisions. The case is given a number that indicates which division will handle the case. Arraignments, however, are assigned based on who is arrested on which week. For example, all felony defendants who are arrested in one week will have their arraignment in Division II; all felony defendants who are arrested in the next week have their arraignment in Division I. The judge for the assigned arraignment court date and the prosecutors who handle the cases in that

division, will handle the arraignment of the defendant. At the arraignment, the Circuit Judge will then give them their next court date and advise them whether the case is in Division I or II. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

94) Rule 8.6 of the Arkansas Rules of Criminal Procedure affords a time period of sixty (60) days from the date of arrest wherein the prosecution is to file a felony Information. Otherwise, a person held in custody "*may*" be released on his own recognizance. Generally, in Benton County, the prosecutors will not file a formal criminal information until the week prior to the arraignment, and often, they will "pend" cases and ask the judge to reset for more time to make a filing decision. When a prosecutor "pends" a case at arraignment, he requests a reset of the arraignment for more time to make a decision on which, if any, charges to file against the defendant. Indigent defendants may be in jail for two months before a filing decision is made. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

95) Counsel for the defendant, whether it be private or a public defender, may file a motion for a bond reduction with the circuit judge of the division where the defendant's case has been assigned. However, this only occurs after the formal filing of the Information which can occur at any time up to sixty (60) days post arrest. *See* Rule 8.6 above. Those motions, however, are not heard until the

arraignment date. If the defendant happens to have an arraignment date in the division other than their case's assigned division, the circuit judge may not hear the bond reduction argument and instead instruct the attorney to make the argument in front of the assigned judge. An indigent defendant may be in jail for 60 days without a filing decision being made on their case, and may be in jail for months before even receiving a hearing on a motion to reduce bond. **Exhibit #4, Plaintiffs' and Separate Defendants' Agreed Statement of Facts.**

Respectfully submitted,

ABIGAIL FARELLA & LOGAN MURPHY, on behalf of themselves and all others similarly situated
PLAINTIFFS

BY:    /s/ Doug Norwood
DOUG NORWOOD, Ark Bar No. 87-097
ALISON LEE, Ark Bar No. 2006-087
Norwood & Norwood, P.A.
P.O. Box 1960
2001 S. Dixieland Road
Rogers, AR 72757
(479) 636-1262    PHONE
(479) 636-7595    FAX
doug@norwoodattorneys.com
alison@norwoodattorneys.com

<u>CERTIFICATE OF SERVICE</u>

I, Doug Norwood certify that on May 1, 2024, I electronically filed the foregoing document with the Clerk of the Court using the efiling system, which shall send notification of such filing which is deemed service to:


Marshall S. Ney
Katherine Campbell
3350 S. Pinnacle Hills Parkway, Suite 301
Rogers, AR 72758

Christine Cryer
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201


                                    /s/ Doug Norwood
                                    DOUG NORWOOD
                                    May 1. 2024