IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ABIGAIL FARELLA; LOGAN W. MURPHY;
and All Others Similarly Situated                                    PLAINTIFFS

V.                          CASE NO. 5:22-CV-5121

DISTRICT JUDGE A.J. ANGLIN;
GREGG PARRISH; and JAY SAXTON                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This litigation arises from a bail hearing procedure in Benton County District Court that Plaintiffs Abigail Farella and Logan W. Murphy maintain is constitutionally defective. They argue under the Sixth and Fourteenth Amendments that indigent criminal defendants have a right to legal representation during the judicial officer's determination of bail—and that Defendants violated that right by failing to timely appoint counsel before their bail was set. Defendants are Benton County District Judge A.J. Anglin; Gregg Parrish, Executive Director of the Arkansas Public Defender Commission; and Jay Saxton, Chief Benton County Public Defender—all sued in their official capacities.

Plaintiffs contend that their injury was not an exception, but the rule. They now move pursuant to Federal Rule of Civil Procedure 23 to certify a class of "those indigent individuals who will appear before Judge Anglin for a bail hearing and will not have appointed counsel present to represent them." Doc. 87, p. 1 (cleaned up); *see also* Doc. 34, ¶ 31. Plaintiffs' Motion for Class Certification (Doc. 87) is fully briefed and ripe for review.[1] For the reasons stated herein, the Motion is **GRANTED**.

---

[1] *See* Doc. 86 (Plaintiffs' Brief in Support); Docs. 90–91 (Defendants Parrish and Saxton's Joint Response and Brief in Support); Doc. 92 (Judge Anglin's Response); Doc. 93 (Plaintiffs' Reply to Judge Anglin).

1

## I. BACKGROUND[2]

Plaintiffs' First Amended Complaint (Doc. 34) describes two nearly identical instances of the alleged procedural defect in Judge Anglin's court. The first was set in motion on May 20, 2022, when Bentonville Police Department officers arrested Ms. Farella for felony possession of a controlled substance, misdemeanor possession of drug paraphernalia, and misdemeanor shoplifting. She alleges that she was transported to the Benton County Jail and placed in a cell. Bentonville Police Corporal Kevin Albert filed a sworn probable cause affidavit later that day and attached a report indicating that the State joined him in requesting that a $2,500 bond be set for Ms. Farella. On May 22, 2022, Ms. Farella appeared before Judge Anglin pursuant to Arkansas Rule of Criminal Procedure 8.1 for an initial hearing, during which he set her bail at $10,000 cash or corporate surety and scheduled arraignment—Ms. Farella's next court date—for June 27, 2022. After bail was set and the arraignment scheduled, Judge Anglin found Ms. Farella indigent and appointed a public defender to represent her in subsequent proceedings.

According to Plaintiffs, the procedural defect is as follows: Whereas the prosecutor's recommendation as to bond amount and pretrial release conditions was considered at Ms. Farella's bail hearing, she was not afforded a parallel opportunity to contest that recommendation; a public defender was not present at the hearing and was not appointed until *after* Judge Anglin set her bond amount and pretrial release conditions.

---

[2] Unless otherwise indicated, the Plaintiffs and Judge Anglin agree on the following facts, and Defendants Parrish and Saxton lack information sufficient to admit or deny them.

Plaintiffs contend that this procedure violated Ms. Farella's right to counsel under the Sixth and Fourteenth Amendments.

One month later, on June 20, 2022, Bentonville Police arrested Mr. Murphy for felony fleeing and misdemeanor reckless driving, and the alleged procedural defect reoccurred. Bentonville Police submitted a sworn probable cause affidavit with a report from another officer stating that the State joined him in requesting that Mr. Murphy's bond be set at $25,000. During Mr. Murphy's bail hearing the next day, Judge Anglin set bail at $40,000 cash or corporate surety, set arraignment for July 25, 2022, found Mr. Murphy indigent, and appointed a public defender to represent him at future proceedings. Plaintiffs allege that Judge Anglin again considered the prosecutor's recommendation concerning Mr. Murphy's bond amount and pretrial release conditions without allowing a public defender a parallel opportunity to advocate on Mr. Murphy's behalf.

Plaintiffs maintain that Ms. Farella's and Mr. Murphy's experiences are the norm. Judge Anglin conducts felony and misdemeanor bail hearings in multiple Benton County courts for thirteen calendar weeks per year throughout his four-year term. Roughly twenty-five percent of bail hearings in Benton County are conducted by Judge Anglin, translating to a total caseload upwards of one thousand cases annually. Plaintiffs, as well as Mr. Parrish and Mr. Saxton, agree that public defenders do not attend bail hearings before Judge Anglin; however, Judge Anglin denies that allegation. If Plaintiffs' allegations are true, then indigent defendants' bail amounts are set and pretrial release conditions are decided without attorney representation—despite the undisputed fact that State prosecutors are permitted to join police in requesting bond amounts. Ultimately, Plaintiffs seek a declaration from this Court that Judge Anglin's bail hearing procedure violates the

Sixth and Fourteenth Amendments and an injunction that would require defense counsel's presence and participation in the bail determination for indigent defendants—though such relief reaches far beyond the present Motion. *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) ("[A] decision to certify a class is far from a conclusive judgment on the merits . . . .").

Here, Plaintiffs seek to certify a class of indigent, unrepresented criminal defendants, which they define as: "(1) pre-trial detainees; (2) who have or will appear before District Judge A.J. Anglin; (3) for a bail / pre-trial release hearing under Arkansas Rules of Criminal Procedure 8-9; (4) who are indigent; and (5) do not have appointed [public defender] representation at that hearing." (Doc. 86, p. 3). Plaintiffs request that the Court designate Ms. Farella and Mr. Murphy as Class Representatives and Mr. Doug Norwood and Ms. Alison Lee of Norwood & Norwood P.A. as Lead Class Counsel.

## II. LEGAL STANDARD

The party seeking class certification bears the burden of proving that the requirements of Rule 23 are satisfied. *See Walmart Stores v. Dukes*, 564 U.S. 338, 350 (2011). Pursuant to Rule 23, certifying a class action requires two steps. First, under Rule 23(a), a class action may be maintained if the following prerequisites are met: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Moreover, "[a]n implicit requirement for any class certification inquiry involves a court's assessment as to the ascertainability of the class." *Fochtman v. DARP, Inc.*, 2019 WL 406146, at *3 (W.D. Ark.

Jan. 31, 2019). To be ascertainable, the proposed class description must be sufficiently definite to identify class members by objective criteria. *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996–97 (8th Cir. 2016).

Second, the plaintiff must satisfy the requirements of one of Rule 23(b)'s three subsections. *See In Re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). At issue here, Rule 23(b)(2) applies where the opposing party acts or refuses to act on grounds applying generally to the class, such that final injunctive relief or corresponding declaratory relief is appropriate for the class as a whole and would provide relief to each member of the class. *See Dukes*, 564 U.S. at 345–46, 360. Class claims under Rule 23(b)(2) must be cohesive, "in that 'the relief sought must perforce affect the entire class at once.'" *Ebert v. General Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016) (quoting *Dukes*, 564 U.S. at 361–62) (emphasis in original).

The district court retains "broad discretion in determining whether to certify a class, recognizing the essentially factual basis of the certification inquiry and . . . the district court's inherent power to manage and control pending litigation." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d at 616 (cleaned up). Nevertheless, district courts must undertake "a rigorous analysis" to ensure that the requirements of Rule 23 are met. *Gen. Tel. Co. Sw. v. Falcon*, 457 U.S. 147, 161 (1982). "Frequently that 'rigorous analysis' will entail some overlap with the merits of plaintiffs' underlying claim[s]." *Dukes*, 564 U.S. at 351. The "preliminary inquiry of the class certification stage may require the court to resolve disputes going to the factual setting of the case." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013).

### III. DISCUSSION

### A. Rule 23(a) Prerequisites

#### *1. Numerosity and Ascertainability*

The Court begins its discussion by assessing whether the class is so numerous that joinder of all members is impracticable. Plaintiffs bear the burden of establishing that numerosity exists; however, "no arbitrary rules regarding the necessary size of classes have been established." *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir. 1983). Many factors are relevant to the numerosity inquiry: most obviously, the "number of persons in the proposed class" but also "the nature of the action, the size of individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all putative class members." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 560–61 (8th Cir. 1982).

Plaintiffs allege that their experiences are representative of a class that meets the numerosity requirement because Judge Anglin's bail hearing procedure will be replicated throughout his felony and misdemeanor caseload—which Judge Anglin admits is "upwards of one thousand cases per year." Doc. 34, ¶ 23; *see also* Doc. 79, ¶ 22. Defendants counter that Plaintiffs' conclusion—that there will thus be thousands of class members—is speculative, conclusory, and uncertain. *See* Doc. 91, p. 5; Doc. 92, p. 7. But given Judge Anglin's admitted caseload, that position defies common sense.

The numerosity requirement asks whether joinder of all potential class members is impracticable. Here, Plaintiffs and Judge Anglin agree that he was elected to a four-year term, which runs from January 1, 2021, to January 1, 2025. And they agree that Judge Anglin holds bail hearings for thirteen weeks each year, with seven hearings per

week (i.e., one per day). *See* Doc. 92, pp. 3-4. This amounts to more than ninety bail hearings per year.

The parties' filings imply that multiple defendants appear at each bail hearing, and as many as eighty percent of criminal defendants are declared indigent, according to one Department of Justice estimate.[3] That estimate may not be precisely extensible to Judge Anglin's Court; it is certainly possible that less than eighty percent of the criminal defendants that appear in his bail hearings are indigent. But even if Judge Anglin declares only *one* criminal defendant indigent per bail hearing, on average, that would amount to more than 360 unrepresented indigent defendants during his four-year term. A class of 360 (and likely many more) indigent criminal defendants is certainly too numerous for joinder to be practicable.[4] *Fochtman v. DARP, Inc.*, 2019 WL 406146, at *4 (W.D. Ark. Jan. 31, 2019) ("It defies common sense to argue that 180 separate lawsuits brought by similarly-situated individuals"—half of the minimum estimated class size here—"litigating the same issues of liability, would somehow be more efficient and more cost-effective than a class action."). Particularly because Plaintiffs seek an injunction and declaratory judgment, numerosity counsels that it will be far more administrable to litigate this matter on a class-wide basis than individually. The Court finds that Plaintiffs have met their

---

[3] *See* Caroline Wolf Harlow, Bureau of Justice Statistics Special Report: Defense Counsel in Criminal Cases 5 (2000) https://bjs.ojp.gov/content/pub/pdf/dccc.pdf [https://perma.cc/YU7V-FS9P] (describing a 1992 and 1996 study, which found that about eighty percent of defendants charged with a felony in the Nation's seventy-five most populous counties reported having public defenders or assigned counsel after being declared indigent).

[4] To avoid confusion, the Court notes that its pleadings-based algebra is merely illustrative, and that the number 360 is only significant as an exemplar of the reasonableness of Plaintiffs' logic. Similarly reasonable calculations would yield the same outcome: a class too numerous for joinder to be practicable.

burden by showing evidence leading to the logical inference that a great many indigent criminal defendants will continue to appear before Judge Anglin at bail hearings without counsel, thus satisfying the numerosity factor. *Halbach v. Great-West Life & Annuity Ins. Co.*, 2007 WL 1018658, at *3 (E.D. Mo. Apr. 2, 2007) (Plaintiffs are not required to "specify an exact number or to prove the identity of each class member, rather, the plaintiffs must only show a reasonable estimate of the number of class members.").

Turning next to ascertainability, the Eighth Circuit, "unlike most other courts of appeals, has not outlined a . . . separate, preliminary requirement." *See Sandusky Wellness Ctr.*, 821 F.3d at 996. Rather, the Eighth Circuit "simply adheres to a rigorous analysis of the Rule 23 requirements, which includes that a class 'must be adequately defined and clearly ascertainable.'" *Id.* (quoting Rule 23). The focus of this threshold inquiry is on whether the proposed class definition identifies class members by objective criteria. *See id.*; *Fochtman*, 2019 WL 406146, at *3 (citing *Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 31 (D.D.C. 2003)).

The Court is satisfied that Plaintiffs' proposed class is readily ascertainable. Plaintiffs' class definition is comprised solely of objective criteria: "(1) pre-trial detainees, (2) who have or will appear before District Judge A.J. Anglin, (3) for a bail / pre-trial release hearing under Arkansas Rules of Criminal Procedure 8-9, (4) who are indigent, and (5) do not have appointed (public defender) representation at that hearing." (Doc. 86, p. 3). And in *Postawko v. Missouri Department of Corrections*, the Eighth Circuit upheld a similarly structured class of incarcerated plaintiffs. 910 F.3d 1030, 1036 (8th Cir. 2018) ("[1] All those individuals in the custody of MDOC, [2] now or in the future, who have been, or will be, [3-4] diagnosed with chronic HCV, as that term is defined medically, [5] but who

are not provided treatment with direct acting antiviral drugs."). Here, like in *Postawko*, the proposed criteria objectively define: (1) the broad group of plaintiffs from which the class is drawn, (2) the class's temporal parameters, (3-4) additional narrowing parameters, and (5) the constitutional injury suffered by class members. Using these criteria, the Court can easily determine who is a member of the proposed class and who is not. As the court reasoned in *Fochtman*, "In order to make a finding that a class will be so numerous that joinder will be impractical, the Court does not need to consult its crystal ball . . . ." 2019 WL 406146, at *3. "The numerosity requirement asks, simply, how many individuals meet the class definition. Here, the number is [at least 360], and the class members' identities are easily ascertainable" or will be as Judge Anglin's term progresses. *Id.*

### 2. Commonality

The commonality inquiry "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349 (quoting *Falcon*, 457 U.S. at 157). However, commonality does not require "that every question of law or fact be common to every member of the class." *Paxton*, 688 F.2d at 561. In fact, as the Supreme Court noted in *Dukes*, "even a single common question will do." 564 U.S. at 359 (cleaned up). To establish commonality, class members' "claims must depend upon a common contention" that must "be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id*. at 350.

Here, both the facts and the law are common to the class. Factually, Plaintiffs and their proposed class members' claims arise where there exist an arrest, recommendations as to bond and pretrial release conditions from the State, and an initial

appearance at bail hearing in which an indigent defendant is unaccompanied by appointed counsel. And legally, Plaintiffs and their proposed class members share common claims: alleged violations of their Sixth Amendment right to counsel and the Fourteenth Amendment's due process and equal protection clauses. There is thus a common question of law as to whether the right to counsel attaches under the Sixth Amendment at the bail hearing and subsequently whether the alleged denial of that right to counsel constitutes a due process or equal protection violation. Accordingly, the Court finds that the commonality requirement is satisfied.

### 3. Typicality

The typicality requirement is satisfied where the proposed class members' claims "are based on the same legal or remedial theory." *Paxton*, 688 F.2d at 561–62; *see also Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990) (similar). Put simply, "[t]he typicality inquiry asks whether the named Plaintiffs' claims are typical of those of the rest of the class." *Fochtman*, 2019 WL 406146, at *5. Here, Defendants argue that factual differences between Plaintiffs and potential class members' claims are fatal to the typicality inquiry; specifically, that proposed class members will face different underlying charges in different courts, albeit in front of Judge Anglin. This argument misses the mark. Plaintiffs have demonstrated that the proposed class shares similar factual and legal claims. And they have shown that their alleged harm is typical—indeed, identical—to the harm that will be visited upon their proposed class members, regardless of their respective charges or courts: the denial of their right to counsel under the Sixth and Fourteenth Amendments. The Court finds that the typicality requirement is satisfied.

### *4. Adequacy of Representation*

#### i. Adequacy of Class Representatives

The inquiry as to the adequacy of the class representation under Rule 23(a)(4) is similar to the typicality inquiry. The Court must ask "whether the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Further, the Court must determine whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562–63.

The Court finds that Plaintiffs will fairly and adequately represent the interests of the class. Ms. Farella and Mr. Murphy both filed affidavits affirming their willingness to actively participate in this litigation through its conclusion and promising to actively and faithfully act as class representatives on behalf of all class members. *See* Docs. 93-1, 93-2. They state clearly that:

> I am a class representative because . . . Judge Anglin failed to provide me with an attorney at my pre-trial release hearing. The harm that was done to me needs to be prevented from happening to other indigents in the future. I have been an active participant in this litigation from the beginning and will be to its conclusion. I am in this case for the long haul . . . .

*See id.* Plaintiffs' affidavits evince their willingness to "vigorously prosecute" Defendants' alleged constitutional violations on behalf of the class. Consequently, the Court finds that Plaintiffs will adequately represent its interests.

#### ii. Adequacy of Counsel

Next, Rule 23(g)'s class counsel requirement provides that the Court must consider:

>  (i) the work counsel has done in identifying or investigating potential claims in the action;
>
>  (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
>  (iii) counsel's knowledge of the applicable law; and
>
>  (iv) the resources that counsel will commit to representing the class . . . .

Fed. R. Civ. P. 23(g).

Relying on *Rattray v. Woodbury County, Iowa*, 253 F.R.D. 444 (N.D. Iowa 2008), *aff'd sub nom.*, 614 F.3d 831 (8th Cir. 2010), Defendants argue that Plaintiffs' counsel are inadequate to represent the class's interests because they waited over a year to file for class certification. While Defendants' argument is not without merit, the Court finds this case distinguishable. In *Rattray*, the court noted that delay in pursuing class certification had potential to prejudice the plaintiffs and potential class members and weighed such prejudice against counsel's ability, experience, and qualifications to conduct the litigation. *See id.* at 456–57. The court found that proposed class counsel's ability and experience did not outweigh the prejudice because there was no sufficient reason for the delay, counsel had no experience litigating class actions, and the plaintiffs' motion to certify the class was filed after an agreed-upon, court-mandated deadline. *See id.*

Analogous facts are absent here; any prejudice caused by delay in seeking certification is outweighed by Plaintiffs' counsel's experience and active engagement in this litigation. The affidavits from Doug Norwood and Alison Lee state that Norwood & Norwood P.A. has class action experience, complex litigation experience, and "unlimited financial resources to see this litigation to its logical conclusion." *See* Docs. 86-1, 86-2. The Court's deadline to file class certification motions was extended pursuant to a joint motion from the parties, and the present Motion for Class Certification was timely

submitted by the parties' agreed-upon deadline. *See* Doc. 75 (Amended Case Management Order); Doc. 81 (Joint Motion to Extend Deadline for Class Certification); Doc. 85 (Text Only Order extending the deadline for class certification). Further, the Court believes that both Plaintiffs and Defendants were clear from the outset of litigation that Plaintiffs intended to pursue class certification. Even assuming, *arguendo*, that it would have been prudent to seek certification earlier, delay in pursuing class certification is not *per se* fatal to adequacy of representation; delay can be reasonable in some circumstances. *Cf. Eastwood v. S. Farm Bureau Cas. Ins. Co.*, 291 F.R.D. 273 (W.D. Ark. 2013) (finding delay in seeking class certification reasonable when the plaintiffs were actively engaged in the litigation, specifically because the plaintiffs' motion to certify class was on time per the 26(f) report and there was voluminous discovery during the delay period). The Court thus finds that Doug Norwood and Alison Lee of Norwood & Norwood P.A. satisfy Rule 23(g)'s class counsel requirements.

### B. Rule 23(b)(2) Requirements

"[S]ubdivision (b)(2) was added to Rule 23 in 1966 in part to make it clear that civil-rights suits for injunctive or declaratory relief can be brought as class actions." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 1776 (4th ed. 2023). To certify a class under Rule 23(b)(2), the party opposing the class must have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Eighth Circuit has held Rule 23(b)(2) certification appropriate where plaintiffs seek injunctive relief "on grounds generally applicable to the class." *Paxton*, 688 F.2d at 563 (citing *United States Fidelity & Guar. Co. v. Lord*, 585 F.2d 860,

13

875 (8th Cir. 1978)); *see also Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016) (holding that Rule 23(b)(2) class certification clearly applies only when a "single injunction or declaratory judgment would provide relief to each member of the class").

The Court finds that Rule 23(b)(2) is satisfied here. Plaintiffs explicitly seek declaratory and injunctive relief and make no request for money damages. (Doc. 34, pp. 16–17; Doc. 87, p. 1). If the Court granted that relief, e.g., by declaring Judge Anglin's current bail hearing procedure unconstitutional and ordering an injunction mandating that indigent defendants at future bail hearings be represented by public defenders, such relief would apply cohesively to each proposed class member. *Postawko*, 2017 WL 3185155, at *13 (holding that a similar class "satisfies Rule 23(b)(2) because Defendants' policies apply generally to the class so that the requested injunctive and declaratory relief would provide relief to all class members"). Indeed, Plaintiffs' claims and requested remedy are the "touchstone of a (b)(2) class." *See Ebert*, 823 F.3d at 480; *cf. Dukes*, 564 U.S. at 361 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997)) ("'Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture."); *see generally* 7A Wright, Miller & Kane, *supra* at § 1776.1 ("Rule 23(b)(2) has been utilized to protect a variety of constitutional rights" through declaratory and injunctive relief).

## IV. CONCLUSION

Pursuant to the findings set forth above, **IT IS ORDERED** that Plaintiffs Abigail Farella and Logan W. Murphy's Motion for Class Certification (Doc. 87) is **GRANTED**.

**IT IS FURTHER ORDERED** that:

(1) The certified class is defined as: "(1) pretrial detainees, (2) who have or will appear before District Judge A.J. Anglin, (3) for a bail or pre-trial release hearing under Arkansas Rules of Criminal Procedure 8–9, (4) who are indigent, and (5) do not have appointed (public defender) representation at that hearing."

(2) Plaintiffs Abigail Farella and Logan W. Murphy are designated as Class Representatives.

(3) Norman Douglas Norwood and Allison Lee of Norwood & Norwood, P.A. are appointed Class Counsel.

**IT IS SO ORDERED** on this 7th day of May, 2024.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE